James O. GRAY, Petitioner-Appellant,

v.

C. L. BENSON, Warden,
Respondent-Appellee.

No. 79–1050.

United States Court of Appeals,
Tenth Circuit.

Submitted Aug. 17, 1979.

Decided Oct. 26, 1979.

---

James O. Gray, pro se.

James E. Buchele, U. S. Atty. and Roger M. Theis, Asst. U. S. Atty., Topeka, Kan., for respondent-appellee.

Before SETH, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

PER CURIAM.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal by James O. Gray from the dismissal of his application for post-conviction relief under 28 U.S.C. § 2255. Gray claims his conviction for transport of forged securities should be set aside because his transfer from a federal institution before trial on a federal indictment violated the Interstate Agreement on Detainers Act, 18 U.S.C. App. § 2.

The only issues on appeal concern waiver of a prisoner's rights under that Act. We hold a prisoner's rights thereunder can be waived, and were in the instant case.

While Gray was in state custody in Missouri for an unrelated conviction, a complaint was filed in the federal district court in Kansas charging him with violation of 18 U.S.C. § 2314 and § 2. In March 1976, a detainer was lodged with Gray's state custodian on the basis of the outstanding federal complaint and warrant.

Pursuant to a writ of habeas corpus ad prosequendum, Gray was removed from state custody to a federal institution in Kansas and an indictment was returned based on the complaint. Petitioner pleaded not guilty, remaining briefly in federal custody until his transfer to the Missouri State Prison. The transfer was at his own request, apparently to obtain medical treatment.

Gray was held in state custody until August 12, 1976, when he was returned to federal custody in Kansas under another writ. Shortly thereafter he entered a plea of guilty to one count of the indictment, was sentenced thereon, and then transported back to Missouri to complete his state sentence.

After his release from the state prison and commencement of service on the federal sentence, Gray became aware of the protection afforded by the Interstate Agreement on Detainers Act, Art. IV(e), 18 U.S.C. App. § 2, which provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

He therefore filed a motion in the federal district court in Kansas to vacate his sentence.

The court agreed that after a detainer has been lodged against a prisoner and the government later commands his appearance by a writ of habeas corpus ad prosequendum the provisions of the Act are triggered, but ordered briefed the question whether petitioner waived his rights under the Act. *Gray v. Benson,* 443 F.Supp. 1284 (D.Kan. 1978). Thereafter the court ruled that Gray had waived the protection of the Act by his guilty plea, and also that he was

estopped from asserting his rights under the Act by his voluntary return to Missouri. *Gray v. Benson,* 458 F.Supp. 1209 (D.Kan. 1978). It is from this order that petitioner requests relief.

The Interstate Agreement on Detainers Act is intended to remedy hardships resulting from the use of detainers and to eliminate potential abuses of the detainer system. *United States v. Dixon,* 592 F.2d 329 (6th Cir.), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979). Article IV allows a prosecutor who has lodged a detainer against a prisoner in another jurisdiction to obtain temporary custody of the prisoner to dispose of outstanding charges. *Id.* As noted, Article IV(e) of the Act declares that if there is no trial on the indictment prior to the prisoner's return to the original place of imprisonment the indictment is to be dismissed with prejudice.

It has been held a prisoner can be estopped from raising the remedial provisions of this subsection. In *United States v. Scallion,* 548 F.2d 1168 (5th Cir. 1977), *cert. denied,* 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978), the prisoner's counsel requested the federal prosecutor to return the prisoner to New York temporarily for a parole hearing. The court held the prisoner was estopped from asserting Article IV(e) because he initiated the transfer. In *United States v. Ford,* 550 F.2d 732 (2nd Cir. 1977), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), a prisoner asked to be returned to state custody and then asserted his rights under the Act. The court ruled that because the purpose of Article IV(e) is to benefit the prisoner by avoiding the disruption of a prisoner's rehabilitation which results from repeated transfers between jurisdictions, rights under the Act are waived by a prisoner's request for transfer. *Dixon* raised the issue whether the article is violated when a prosecutor in behalf of defense counsel, makes a written request for temporary custody to permit defense counsel to confer with his client. Since this transfer was not to facilitate prosecution of federal charges, it was held Article IV(e) was not violated.

 The circumstances here are similar to the cited cases. We agree that a prisoner may waive his rights under the Interstate Agreement on Detainers Act, and has done so requesting transfer back to the state prison. We do not reach the question whether his guilty plea to the federal charges also constitutes such a waiver.

The dismissal of the motion to vacate sentence is affirmed.

AFFIRMED.