## JOHN N. CRAIG *v.* GEORGE D. BRONSON, WARDEN (12747)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and BRENNEMAN, Js.

Argued November 13, 1986—decision released January 20, 1987

*James L. Radda,* special public defender, for the appellant (petitioner).

*John F. Cocheo,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee (respondent).

SHEA, J. In this habeas corpus action the petitioner claims that he has been illegally confined by the respondent pursuant to a judgment of the Superior Court rendered at a time when the court was without jurisdiction. The petitioner relies upon General Statutes §§ 54-82c[1] and 54-82d,[2] which provide respectively that a prisoner

[1] "[General Statutes] Sec. 54-82c. (Formerly Sec. 54-139). PRISONER'S RIGHT TO SPEEDY TRIAL ON PENDING CHARGES. (a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden, community correctional center administrator or other official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner.

"(b) The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, community correctional center administrator or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, community correctional center administrator or other official having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official has knowledge and of his right to make a request for final disposition thereof.

"(d) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in subsection (a) hereof shall void the request."

[2] "[General Statutes] Sec. 54-82d. (Formerly Sec. 54-140). DISMISSAL OF CHARGES ON FAILURE TO GRANT PRISONER SPEEDY TRIAL. If an action is not assigned for trial within the period of time as provided in section 54-82c, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall enter an order dismissing the same."

who properly requests a speedy trial upon an information or indictment pending within this state "shall be brought to trial within one hundred twenty days" after delivery of the request, and that "[i]f an action is not assigned for trial within [such period] no court of this state shall any longer have jurisdiction thereof . . . ." The trial court denied the petition on two grounds: (1) that § 54-82d does not require the sanction of dismissal to be imposed where an assignment of the case for trial is made within the 120 day period specified by § 54-82c even though the trial does not commence or the case is not disposed of within that period; and (2) that the petitioner had waived any noncompliance with the statutory time limit by virtue of having pleaded guilty to the charge and having been sentenced without protest while aware of the failure to satisfy the requirement of being brought to trial within the 120 day period of § 54-82c. We disagree with the first of these conclusions but agree with the trial court that the defendant waived his right to a trial within the time constraints imposed by § 54-82c. Accordingly, we find no error in the judgment dismissing the petition.

There is no dispute concerning the facts. On August 18, 1982, the petitioner began to serve at the state prison in Somers a term of imprisonment pursuant to a sentence imposed by the Superior Court. Having become aware of another information pending against him in the New London judicial district, the petitioner on June 30, 1983, caused his request for a final disposition of that charge to be delivered to the appropriate authorities pursuant to § 54-82c. On November 4, 1983, 127 days after the delivery of his request, the petitioner entered a plea of guilty to arson in the second degree in violation of General Statutes § 53a-112 (a) (1). The attorney who represented him at that time indicated his awareness that the 120 day period prescribed by § 54-82c for bringing the petitioner

to trial on the information had expired, but he regarded the sanction of dismissal under § 54-82d as probably inapplicable because an assignment of the case for a trial had been made within the period. The court, *Goldberg, J.,* in accepting the plea, remarked that some time prior to October 28, 1983, the date when the 120 day period from the delivery of the request had expired, the case had been assigned to him for trial.

I

Sections 54-82c and 54-82d were enacted simultaneously in 1957 as related parts of the same public act. Public Acts 1957, No. 551, §§ 1 and 2. The brief legislative history concerning the bill indicates that its purpose was to "allow a prisoner who was committed to jail to ask that he be tried within 120 days on any information or indictment pending against him."[3] This objective could hardly be achieved if we were to adopt the view of the trial court that the sanction of § 54-82d is inapplicable as long as a case has been placed on an assignment list within the prescribed period, even though the trial does not commence within that time and the case has never been continued for "good cause shown in open court" as permitted by § 54-82c. See *State* v. *Antrum,* 185 Conn. 118, 122, 440 A.2d 839 (1981).

In *State* v. *Best,* 171 Conn. 487, 489, 370 A.2d 1035 (1976), this court construed § 54-82d to provide that, "if an action is not assigned for trial in accordance with the provisions of [§ 54-82c]" the specified sanction of dismissal would be imposed, although § 54-82d as then framed referred to an action that had "not been

---

[3] Senator John H. Filer stated: "Mr. President, this bill would allow a prisoner who was committed to jail to ask that he be tried within 120 days on any information or indictment pending against him. It seems the fundamental principle of our justice is that the person be tried and sentenced promptly. This bill will go a long way to produce that effect." 7 S. Proc., Pt. 6, 1957 Sess., p. 3712, on H.B. 683.

assigned for trial within the period of time as *herein* provided." (Emphasis added.) In conformity with this interpretation,[4] the legislature, in making an extensive technical revision of our criminal statutes in 1980, amended § 54-82d by substituting for the original "as herein provided" qualification of the word "time" the present statutory language, "as provided in section 54-82c." It appears that the legislators in enacting this amendment of § 54-82d intended to conform the time limit contained therein to that specified in § 54-82c for bringing to trial a prisoner who has properly requested a speedy disposition of a pending information, 120 days from the date of the request. We hold that the sanction of § 54-82d may be invoked whenever the time specified in § 54-82c for bringing such a prisoner to trial has been exceeded unless a "necessary or reasonable continuance" has been granted "[f]or good cause shown in open court," as § 54-82c provides.

To construe § 54-82d to apply only when a case has not been listed among the cases assigned for trial within the period prescribed by § 54-82c, regardless of its actual trial date, would wholly frustrate the salutary purpose of this statutory scheme for speedy disposition of charges against prisoners already serving sentences. Our view that the statutory scheme of §§ 54-82c and 54-82d mandates commencement of a trial, in the absence of a "necessary or reasonable continuance," within 120 days of receipt of a properly filed request for disposition of outstanding charges in this state against a prisoner sentenced in this state accords with

---

[4] In the report of the law revision commission, which drafted the 1980 version of our criminal statutes, there appears a note relating to the proposed amendment that points out the difference in phraseology between "shall be brought to trial" in § 54-82c and "assigned for trial" in § 54-82d and indicates that the discrepancy had been the "subject of litigation" in *State* v. *Best,* 171 Conn. 487, 370 A.2d 1035 (1976), but that the court "had not ruled on it." See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1980 Sess., p. 167, Appendix 1-293.

the position we have taken with respect to the Interstate Agreement on Detainers, General Statutes § 54-186. We have construed that statute, commonly referred to as the IAD, to require that a prisoner in another state who requests a final disposition of a charge in this state must be brought to trial within the 180 day period allowed following receipt of the prisoner's request. *State* v. *Braswell,* 194 Conn. 297, 305, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985); see *United States* v. *Mauro,* 436 U.S. 340, 364, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978). It would be incongruous to hold that the legislature intended to establish definite time limits for the disposition of interstate detainers, but that the time constraints for bringing an intrastate detainee to trial could be circumvented simply by placing the case on an assignment list.

Since it is undisputed in this case that the time limit prescribed by § 54-82c had expired before the petitioner was "brought to trial" and that no continuance for "good cause shown in open court" was ever granted, it is clear that he was entitled to invoke the protection afforded by § 54-82d before he chose to plead guilty to the charge.

## II

As we have noted, the record indicates that the petitioner realized at the time he entered his guilty plea on November 4, 1983, that the 120 day period prescribed by § 54-82c had expired and that a legal issue existed concerning the applicability of § 54-82d under the circumstances. The petitioner had originally been charged with arson in the first degree, in violation of General Statutes § 53a-111 (a), a class A felony calling for a term of imprisonment of not less than ten years nor more than twenty-five years. General Statutes § 53a-35a (3). As a result of a plea bargain, he was allowed to plead

to a substitute information charging arson in the second degree in violation of § 53a-112 (a) (1), a class B felony with a one year minimum and a twenty year maximum sentence. General Statutes § 53a-35a (4). The state also agreed to recommend a sentence, concurrent with terms of imprisonment being served, of ten years to be suspended after the petitioner had served five years, with the further understanding that he could argue for a lesser sentence at the sentencing hearing. The state's attorney expressly stated that a primary reason for the proposed disposition of the case was "a claim that was made regarding the speedy trial" and he sought a waiver of that claim. In response, counsel for the petitioner explained to the court, *Goldberg, J.,* that he had filed a motion to dismiss because the petitioner had not been brought to trial within the period prescribed by § 54-82c, but that he did not view the likelihood of success as "particularly great" because an assignment of the case for trial had been made within the 120 day period and, therefore, § 54-82d might not be applicable. On behalf of the petitioner he expressly withdrew "any claim under the Speedy Trial Act referencing specifically to 54-82c of the Connecticut General Statutes." During the canvass conducted by the court prior to accepting the guilty plea, the petitioner acknowledged that he had discussed his plea with his attorney. He expressed his satisfaction with the plea agreement and also said he was "pleased" with the services of his attorney.

At the sentencing hearing the court, *Goldberg, J.,* adopted the recommendation of the state and imposed sentence accordingly. During this proceeding counsel for the petitioner, in arguing for a lesser sentence than that recommended by the state, alluded to the "speedy trial claims" that had been mentioned when the plea had been accepted. No motion to withdraw the guilty plea, either prior to sentence or thereafter, was made,

however, nor did the petitioner ever file an appeal from the judgment. It was not until February 8, 1985, when he filed the present habeas corpus action, that he first claimed the invalidity of his conviction.[5] Under these circumstances the conclusion of the habeas court, *Kline, J.,* that the petitioner had waived the failure of the state to comply with § 54-82c, is more than adequately supported by the record.

The petitioner does not dispute the factual finding of waiver made by the trial court but maintains that § 54-82d should be construed to deprive a court of jurisdiction of the subject matter of a criminal prosecution where the state has neglected to bring a prisoner to trial within 120 days pursuant to § 54-82c. He relies upon the provision of § 54-82d that declares the consequence of failing to assign an "action" in conformity with the time limit of § 54-82c to be that "no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall enter an order dismissing the same." His claim is essentially that this statutory language must be construed to make noncompliance with § 54-82c on the part of the state a circumstance automatically depriving the court of jurisdiction over such a criminal action and that this loss of jurisdiction cannot be waived by the parties either implicitly or expressly.

This court has held that "the parties cannot confer subject matter jurisdiction on a court by consent, waiver, silence or agreement." *Hayes* v. *Beresford,* 184

[5] Our rejection of the petitioner's contention that § 54-82d decrees a loss of subject matter jurisdiction, which may not be waived, makes it unnecessary to address the consequences of his failure to appeal from the judgment of conviction. This opinion, therefore, should not be viewed to imply that the principle of res judicata, which precludes attempts to invalidate a judgment once it has become final, is not generally applicable to questions of subject matter jurisdiction. See 1 Restatement (Second), Judgments § 11, comment d, and § 12.

Conn. 558, 562, 440 A.2d 224 (1981); see *Reed* v. *Reincke,* 155 Conn. 591, 236 A.2d 909 (1967). We have also declared that the issue of lack of jurisdiction may be raised at any time. *Lenge* v. *Goldfarb,* 169 Conn. 218, 222, 363 A.2d 110 (1975). By contrast, jurisdiction over the person of a party, as the defendant concedes, may be waived either expressly or impliedly. *Reed* v. *Reincke,* supra, 598–99. We have held that the failure to raise a timely objection to the jurisdiction of the court over a criminal defendant constitutes a waiver of any defect relating to jurisdiction of his person. Id., 598; see *Albrecht* v. *United States,* 273 U.S. 1, 8, 47 S. Ct. 250, 71 L. Ed. 505 (1927). Thus, the petitioner, who expressly withdrew his motion to dismiss the information as part of a plea bargain, must be deemed to have waived any infirmity in the court's jurisdiction over his person.

Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second), Judgments § 11. "A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." *Monroe* v. *Monroe,* 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. Since the Superior Court plainly had jurisdiction of the criminal action of which the petitioner requested a speedy disposition, his contention must be that the legislature intended to terminate the authority of that court over the action upon expiration of the time period prescribed by § 54-82c. It is difficult to perceive what policy the legislature might have had in mind if such a result was intended, because analogous time constraints upon criminal actions found

in statutes of limitation or in the constitutional right to a speedy trial have not generally been regarded as affecting jurisdiction. *State* v. *Littlejohn,* 199 Conn. 631, 634–40, 508 A.2d 1376 (1986); see *Barker* v. *Wingo,* 407 U.S. 514, 528–30, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

We are not persuaded that the language of § 54-82d must be construed to effectuate a loss of jurisdiction over the subject matter rather than the person of a defendant whose right to a speedy trial pursuant to § 54-82c has been violated. Although § 54-82d must be read to declare that the consequence of official tardiness in responding to a statutory demand for speedy trial is a loss of jurisdiction over the "action" and that "the untried indictment or information" shall be of no "further force or effect," requiring "an order dismissing the same," the same results would necessarily follow a dismissal for lack of personal jurisdiction. Whether the lack of jurisdiction relates to the person or the subject matter, the criminal action must be dismissed and the charging documents that brought that action to court are effectively nullified.[6]

Because the issue of whether § 54-82d decrees a loss of subject matter rather than personal jurisdiction is not satisfactorily resolved by the statutory language, it is appropriate to resort to other sources to ascertain the legislative intent. At the same session in which

---

[6] We have recently construed language of our criminal statute of limitations, General Statutes § 54-193 (b), which provides in part that "[n]o person may be prosecuted for any offense . . . except within the five years after the offense has been committed," not to involve jurisdiction over the subject matter but merely to provide a defense that must be affirmatively pleaded. *State* v. *Littlejohn,* 199 Conn. 631, 639–41, 508 A.2d 1376 (1986). Accordingly, we held that the defense of the statute of limitations could be waived by a defendant who sought to plead guilty to a lesser offense that was barred by the statute. Id. Some other courts have treated similarly worded statutes as relating to jurisdiction over the subject matter and, therefore, unwaivable. Id., 639.

§ 54-82c and § 54-82d were enacted, the legislature also adopted the IAD, which relates to the disposition of charges in one state against a prisoner who is incarcerated in another state. For interstate detainees, article III (d) of the agreement contains a provision analogous to § 54-82d concerning the effect of noncompliance with the time limits prescribed for commencing trial of pending charges in a state following a request for disposition by a prisoner in another state: "If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." We have construed the IAD to allow a period of 180 days from receipt of the out-of-state prisoner's request by the state in which the charges are pending for bringing the case to trial. *State* v. *Braswell,* supra, 305. Although a violation of this time constraint allows the prisoner to invoke the sanction of dismissal with prejudice pursuant to article III (d), the federal courts have held that a prisoner may waive his rights under the IAD and that, accordingly, jurisdiction over a criminal action is not automatically lost upon expiration of the time limit. *Brown* v. *Wolff,* 706 F.2d 902, 907 (9th Cir. 1983); *Kowalak* v. *United States,* 645 F.2d 534, 536–37 (6th Cir. 1981); *Gray* v. *Benson,* 608 F.2d 825, 827 (10th Cir. 1979). Such a waiver has been found where the prisoner has elected to plead guilty to the charge despite the IAD violation, even though the record may disclose no express waiver. *Kowalak* v. *United States,* supra; *Gray* v. *Benson,* supra.

Because the IAD, as an interstate compact authorized by Congress, has been deemed to constitute federal law; *Cuyler* v. *Adams,* 449 U.S. 433, 442, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981); *State* v. *Braswell,* supra,

304; interpretations of its provisions by the federal courts have special significance. Although §§ 54-82c and 54-82d are not part of any interstate compact and their construction, therefore, is not subject to federal control, the problems[7] created by intrastate detainers with respect to prisoner rehabilitation and sentencing fairness are not essentially different whether the outstanding charge is pending within the state having custody or in another state. Our intrastate detainer statutes, §§ 54-82c and 54-82d, were modeled after a proposal of the Committee of State Officials on Suggested State Legislation of the Council of State Governments in its 1957 program, which also advocated adoption of an Agreement on Detainers for prompt disposition of charges against out-of-state prisoners. Council of State Governments, Suggested State Legislation Program for 1957, pp. 74–86; see Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1957 Sess., pp. 229–30, remarks of Representative Marjorie D. Farmer. As the report of the committee observes, "[t]he Agreement on Detainers applies the same principles embodied in the intrastate act to the interstate field." In states that have adopted the Uniform Mandatory Disposition of Detainers Act, which was promulgated in 1958 by the uniform laws commissioners and applies to intrastate detainers, the practice has been to construe its provisions to harmonize with corresponding provisions of the IAD. *People* v. *Higinbotham,* 712 P.2d 993, 1001 (Colo. 1986); *Sweat* v. *Darr,* 235 Kan. 570, 575, 684 P.2d 347 (1984); *State* v. *Smith,* 686 S.W.2d 543, 547 (Mo. App. 1985). Prior to the declaration in *Cuyler* v. *Adams,* supra, of the preeminence of federal interpretations of the IAD, some courts had

---

[7] For a detailed analysis of the hardships imposed upon prisoners by detainers in the absence of statutes mandating speedy disposition thereof, see *United States* v. *Ford,* 550 F.2d 732, 737–41 (2d Cir. 1977), aff'd sub nom. *United States* v. *Mauro,* 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

taken the position that noncompliance with the uniform act could not be waived, as the petitioner contends § 54-82d dictates. *Pierson* v. *State,* 210 Kan. 367, 372, 502 P.2d 721 (1972); *State* v. *Goetz,* 187 Kan. 117, 120, 353 P.2d 816 (1960). This federal influence upon the construction of parallel provisions of the IAD has resulted, because of the need for uniformity of treatment between interstate and intrastate detainers, in some modification of the view that any noncompliance with the uniform act automatically results in a loss of jurisdiction regardless of waiver or the absence of prejudice. *People* v. *Higinbotham,* supra, 1000–1001; see *People* v. *Moody,* 676 P.2d 691 (Colo. 1984).

We are persuaded that the legislative intent can best be implemented by adopting a construction of our intrastate detainer statutes that is consistent with that which federal authority commands us to adopt for the IAD. Accordingly, we conclude that § 54-82d does not decree a loss of jurisdiction of the subject matter of a criminal action as a sanction for noncompliance with the time limitation of § 54-82c, but only a loss of jurisdiction over the person of the prisoner whose request for a prompt disposition of a charge has not been fulfilled. The trial court, therefore, correctly concluded that the petitioner's express waiver of the failure to bring him to trial within the prescribed period must be given effect and that the judgment of conviction must stand. The petition was properly dismissed.

There is no error.

In this opinion the other justices concurred.