[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS AND MOTION TO STRIKE
On May 24, 2000, the petitioning statewide grievance committee filed an amended presentment complaint, pursuant to Practice Book §§ 2-37(c)[1]
CT Page 11114 and 2-47 (a),[2] against the respondent, Douglas R. Daniels, an attorney at law, for failing to comply with two orders of restitution imposed in connection with Grievance Complaints # 98-0032, Telford v.Daniels, and #98-0056, DePallo v. Daniels.[3]
The petitioner alleges in count one that on November 19, 1999, a reviewing committee of the petitioner dismissed the grievance complaint entitled Telford v. Daniels but nonetheless ordered the respondent to pay restitution to the complainant in the amount of $500 within thirty days of the final decision. As of December 19, 1999, the respondent had not provided the petitioner with proof of his compliance with the order, and in a letter dated December 22, 1999, the petitioner requested that the respondent provide such proof. On February 17, 2000, the petitioner took note of the respondent's failure to comply with the restitution order and his failure to respond to its letter of December 22, 1999, and voted to file a presentment against him in the Superior Court.
The petitioner alleges in count two that on December 10, 1999, a reviewing committee of the petitioner dismissed the grievance complaint entitled DePallo v. Daniels but nonetheless ordered the respondent to pay restitution to the complainant of the unused portion of the $15,000 retainer, after accounting for legal services provided, within sixty days of the date of the final decision. As of February 8, 2000, the respondent had not provided the petitioner with proof of his compliance with the restitution order, and in a letter dated March 24, 2000, the petitioner requested that the respondent provide written proof of his compliance, or a written explanation as to why he had not complied, within twenty days of the date of the letter. On May 18, 2000, petitioner took note of the respondent's failure to comply with the restitution order and his failure to respond to its letter of March 24, 2000, and voted to file a presentment against him in the Superior Court.[4]
On June 20, 2000, the respondent filed a motion to dismiss and a motion to strike, identical in wording and supported by identical memoranda of law. The petitioner submitted a memorandum of law, dated July 6, 2000, in opposition to the respondent's motion to dismiss and motion to strike. On July 12, 2000, the parties appeared before the undersigned to argue their respective positions, and the respondent submitted a supplemental memorandum of law briefing constitutional issues. The petitioner then filed an additional memorandum of law, dated August 2, 2000, in response to the respondent's supplemental memorandum of law.
"Judges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline members of the bar. . . . It is their unique position as officers and commissioners of the court . . . which casts attorneys in a special relationship with the judiciary and CT Page 11115 subjects them to its discipline." (internal quotation marks omitted.)Statewide Grievance Committee v. Presnick, 215 Conn. 162, 166, 575 A.2d 210
(1990); see also Doe v. Statewide Grievance Committee, 240 Conn. 671,677-678, 694 A.2d 1218 (1997).
"In exercising their inherent supervisory authority, the judges have authorized grievance panels and reviewing committees to investigate allegations of attorney misconduct and to make determinations of probable cause. See Practice Book [§ 2-29] et seq. Further, the judges have empowered the statewide grievance committee to file presentments in Superior Court seeking judicial sanctions against those claimed to be guilty of misconduct. See Practice Book [§ 2-36]. In carrying out these responsibilities, these bodies act as an arm of the court." (Internal quotation marks omitted.) Statewide Grievance Committee v.Presnick, supra, 215 Conn. 167.
"In cases of alleged attorney misconduct, the jurisdiction of the committee and the jurisdiction of the court are necessarily intertwined and [the statutes or rules governing attorneys] must be interpreted in light of the broad framework of that relationship." Doe v. StatewideGrievance Committee, supra, 240 Conn. 676 n. 7. "The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court. . . . Once the complaint is made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. Id., 678.
"In the procedural scheme here in issue, the grievance panels and reviewing committees carry out what are essentially investigative, fact-bound functions that only determine the probability that an act of attorney misconduct has occurred. . . . For its part, the statewide grievance committee's only function in the case at hand was to initiate the presentment. The presentment that thereafter followed was a de novo, evidentiary proceeding carried out in court. The ultimate decision as to whether an act of misconduct had occurred reposed solely with the judge, as did the power to administer an appropriate sanction. . . . [T]he delegation of the determination of probable cause to the grievance panel and reviewing committee here in issue, and the delegation of the presentment function to the statewide grievance committee did not strip from the court the "essential attributes' of the judicial function involved, i.e., the regulation of attorney conduct." (Citations omitted; internal quotation marks omitted.) Statewide Grievance Committee v.Presnick, supra, 215 Conn. 167-68.
A. Motion to Dismiss
CT Page 11116
Practice Book § 10-31(a) provides, in pertinent part: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter. . . . This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record."
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the petitioner cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original) Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914
(1991). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Figueroa v. C S BallBuilding, 237 Conn. 1, 4, 675 A.2d 845 (1996).
"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second), Judgments § 11. A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. Monroe v. Monroe, 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S.Ct. 20, 62 L.Ed.2d 14 (1979). Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. Craig v.Bronson, 202 Conn. 93, 101, 520 A.2d 155 (1987). It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. ConnecticutLight Power Co. v. Costle, 179 Conn. 415, 420-21 n. 3, 426 A.2d 1324
(1980)." (Internal quotation marks omitted.) Beizer v. Dept. of Labor,56 Conn. App. 347, 361-62, 742 A.2d 821 (2000).
"In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v. Ment, 244 Conn. 296,308, 709 A.2d 1089 (1998).
The respondent moves to dismiss the presentment action on the ground that both the reviewing committees and the petitioner lacked jurisdiction to issue and enforce, respectively, the orders of restitution absent a finding of misconduct. He contends that the 1 restitution orders issued without jurisdiction cannot therefore form the basis for a presentment action. The respondent further argues that the court lacks jurisdiction because the decisions by the reviewing committees to dismiss the CT Page 11117 complaints, together with the absence of any appeal by the complainants from the decisions to dismiss, have made the decisions final judgments. The respondent does not develop this second argument, but the implication is that after the dismissals, which were final, the petitioner lacked jurisdiction to pursue any further action against him based on, or arising out of, the dismissed complaints. He suggests that if the petitioner's presentment action is invalid, the court lacks subject matter jurisdiction.
The court concludes that it does have jurisdiction over the subject matter of this presentment action and therefore denies the motion to dismiss for two reasons. First, failure to comply with an order of restitution is facially a ground for presentment before the Superior Court under Practice Book § 2-37(c). The petitioner has alleged noncompliance, not disputed by the respondent, and has presented the respondent before the court for disciplinary action. Therefore, the presentment case is ripe and justiciable before the court.
Second, the courts possess the inherent authority to adjudicate attorney disciplinary proceedings and have a broad supervisory role in governing attorney conduct. See Statewide Grievance Committee v.Presnick, supra, 215 Conn. 166-67; Doe v. Statewide Grievance Committee,
supra, 240 Conn. 677-78. Because the court has the inherent authority to supervise the conduct of attorneys practicing under its jurisdiction and is presented with a final decision by the petitioner for presentment, the court has jurisdiction over the subject matter of this presentment action. The court therefore denies the motion to dismiss.
B. Motion to Strike
In the alternative, the respondent has filed a motion to strike, arguing that the petitioner has failed to state a cause of action sufficient to warrant the presentment action. "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted, or (2) the legal sufficiency of any prayer for relief in any such complaint . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 10-39; see also Peter-Michael, Inc. v.Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "The proper method to challenge the legal sufficiency of a complaint is to make a motion to strike prior to trial." Gulack v. Gulack, 30 Conn. App. 305,309, 620 A.2d 181 (1993).
"The role of the trial court [is] to examine the [complaint], construed in favor of the [petitioners], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation CT Page 11118 marks omitted.) Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375,378, 698 A.2d 859 (1997). "A motion to strike admits all facts well pleaded." Parsons v. United Technologies Corp., 243 Conn. 66, 68,700 A.2d 655 (1997). "Practice Book [§ 10-39] allows for a claim for relief to be stricken only if the relief sought could not be legally awarded." Pamela B. v. Ment, supra, 244 Conn. 325. "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." Id., 308.
Because "[a] motion to strike admits all facts well pleaded"; Parsonsv. United Technologies Corp., supra, 243 Conn. 68; the court must assume the truth of the petitioner's allegations and disregard the respondent's claims to the contrary.[5] The petitioner alleges that its reviewing committees dismissed the two grievance complaints but nevertheless validly ordered that the respondent pay restitution to the complainants. Because the petitioner has not alleged that the dismissal of the complaints was conditioned on the respondent's compliance with the restitution orders,[6] there is no reason not to assume that the dismissal in both instances was presumed to be final and absolute, free of any conditions.[7] The issue, therefore, is whether the petitioner may order restitution absent a finding of misconduct by the respondent.
Practice Book § 2-37 provides:
"(a) A reviewing committee or the statewide grievance committee may impose one or more of the following sanctions and conditions in accordance with the provisions of Sections 2-35 and 2-36: (1) reprimand; (2) restitution; (3) assessment of costs; (4) an order that the respondent return a client's file to the client; (5) a requirement that the respondent attend continuing legal education courses, at his or her expense, regarding one or more areas of substantive law or law office management; (6) an order to submit to fee, arbitration; (7) with the respondent's consent, an order to submit to periodic audits and supervision of the attorney's trust accounts to insure compliance with the provision of Section 2-27 and the related Rules of Professional Conduct; (8) with the respondent's consent, a requirement that the respondent undertake treatment, at his or her own expense, for medical, psychological or psychiatric conditions or for problems of alcohol or substance abuse. (b) In connection with subsection (a)(6), a party who refuses to utilize the no cost fee arbitration service provided by the Connecticut Bar Association shall pay the cost of the arbitration. (c) Failure of the respondent to comply with any sanction or condition imposed by the statewide grievance committee or a reviewing committee may be grounds for presentment before the superior court."
Practice Book § 2-37 thus provides the petitioner with the CT Page 11119 authority to administer sanctions and conditions without resorting to the Superior Court. Failure to comply with any sanction or condition imposed by the petitioner may result in a presentment to the Superior Court. Practice Book § 2-37(c). When a sanction or condition is imposed on him, an attorney must decide whether to comply, appeal or make the petitioner file a presentment in the court. See W. Moller W. Horton, Connecticut Practice — Practice Book Annotated, Superior Court Civil Rules (4th Ed. 1998) § 2-37, p. 199, comment. Practice Book § 2-38 provides for judicial review of a reprimand, the first enumerated sanction under § 2-37, in the wake of the Supreme Court's decision in Pinsky v. Statewide Grievance Committee, 216 Conn. 228, 232,578 A.2d 1075 (1990) (holding that an attorney is entitled to judicial review of a reprimand decision despite lack of statutory right of appeal). The Practice Book does not, however, provide for judicial review of the other enumerated sanctions and conditions which may be imposed under § 2-37.
Practice Book § 2-35(e) provides, in pertinent part: "Within ninety days of the date the grievance panel filed its determination of probable cause or no probable cause with the statewide grievance committee, the reviewing committee shall render a final written decision dismissing the complaint, imposing sanctions and conditions as authorized by Section 2-37 or directing the statewide bar counsel to file a presentment against the respondent in the superior court and file it with the statewide grievance committee."[8]
The respondent argues that under the plain language of Practice Book § 2-35(e), the reviewing committee has three mutually exclusive options: a) dismiss the complaint; b) impose sanctions or conditions; or c) present the attorney to the Superior Court for discipline. He argues that the reviewing committees of the petitioner could not legally impose the sanction of restitution absent a finding of misconduct. In his supplemental memorandum, the respondent also argues that the imposition of restitution absent a finding of misconduct violates his constitutional right to due process and deprives him of the equal protection of the law.
The petitioner argues that it is free to impose restitution absent a finding of misconduct because there is no express language anywhere in the Practice Book, particularly § 2-37, that requires a finding of misconduct prior to the imposition of sanctions and conditions. The petitioner argues further that because the imposition of a reprimand has been held to affect an attorney's law license and, therefore, to require a finding of misconduct by clear and convincing evidence, the imposition of a lesser sanction or condition that does not affect an attorney's law license does not require a finding of misconduct. To buttress its claim, CT Page 11120 the petitioner calls attention to the fact that, except for reprimand; see Practice Book § 2-38; the Practice Book does not provide for appeal by an attorney to the Superior Court from a decision by a reviewing committee of the petitioner or the petitioner imposing any other sanctions or conditions under § 2-37. The petitioner draws the following conclusion: "The lack of any appeal procedure under the Practice Book for the imposition of sanctions and conditions other than a reprimand leads to the logical conclusion that the judges did not consider the remaining seven sanctions and conditions to constitute discipline affecting an attorney's license to practice law. Therefore, if restitution and the remaining six sanctions and conditions do not constitute discipline against an attorney's law license, the reviewing committee is not required to find a violation of ethical misconduct by clear and convincing evidence prior to imposing these sanctions and conditions." (Petitioner's memorandum, p. 7.)
For purposes of the motion to strike, the court views the issue as limited to whether the petitioner can legally impose restitution absent a finding of misconduct under Practice Book § 2-37(a)(2), leaving to another day the question of whether the petitioner can impose any other sanctions or conditions under § 2-37 (a) absent a finding of misconduct. For purposes of the adjudication of this issue, it is immaterial whether restitution is termed a sanction or a condition under Practice Book § 2-37(a).
The plain language of the Practice Book rules, and specifically that of § 2-35 (e), undercuts, rather than supports, the petitioner's argument that it can both dismiss a grievance complaint and impose restitution. The petitioner makes much of the fact that the disjunctive "or" separates "imposing sanctions and conditions" and "directing the statewide counsel to file a presentment," but not "dismissing the complaint" and "imposing sanctions and conditions" in § 2-35 (e). The petitioner cites no authority, but concludes that it can both dismiss a complaint and impose restitution on the basis of the absence of the disjunctive "or" between the "dismissing the complaint" and "imposing sanctions and conditions."
Contrary to the petitioner's argument, it is natural and reasonable to read the syntactic structure of the relevant part of Practice Book §2-35(e) as being disjunctive throughout. This reading supports the respondent's argument that the rule provides for three mutually exclusive options: dismiss the complaint, or impose sanctions and conditions, or
file a presentment. It is unnatural to read the comma separating the first two options as permitting an "and/or" construction when the comma is obviously subordinate to, and governed by, the disjunctive "or" that concludes the sentence.[9] The petitioner tortures both logic and the CT Page 11121 sentence structure of the rule to reach the conclusion that it can dismiss the complaint but still order restitution.[10] "In accord with the tenets of statutory construction, we attribute the plain meaning to the words of a statute or regulation." Hayward v. Hayward, 53 Conn. App. 1,9-10, ___ A.2d ___ (1999). "[T]he court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." (Internal quotation marks omitted.) DeCarlo and Doll, Inc. v. Dilozir,45 Conn. App. 633, 639, 698 A.2d 318 (1997).
Second, the petitioner's effort to draw a distinction between a sanction, here reprimand, that "affects" an attorney's license to practice law, therefore requiring proof of misconduct by clear and convincing evidence, and a sanction that purportedly does not "affect" the license to practice law, is unavailing.[11] Such a distinction implies that the imposition of the other sanctions that purportedly do not "affect" an attorney's law license would not require proof of misconduct. In Connecticut, as well as in most states, a uniform standard of clear and convincing evidence applies to attorney disciplinary proceedings "regardless of the nature of the sanction ultimately imposed."Statewide Grievance Committee v. Presnick, supra, 215 Conn. 171-72; see also Statewide Grievance Committee v. Friedland, 222 Conn. 131, 135,609 A.2d 645 (1992). A "floating standard of proof" is neither desirable nor required. Statewide Grievance Committee v. Presnick, supra,215 Conn. 171. Because a complainant has "absolute immunity" in filing a grievance complaint against an attorney, however false or frivolous, in view of the strong "public policy of protecting the courts and the public from unethical and unprofessional attorneys"; see Field v. Kearns,43 Conn. App. 265, 269, 277, 682 A.2d 148 (1996); clear and convincing evidence, a higher standard than that of fair preponderance of the evidence, is required to prove attorney misconduct. See StatewideGrievance Committee v. Presnick, supra, 215 Conn. 171 (noting that some earlier Superior Court decisions used preponderance standard to prove misconduct). "The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof." (Internal quotation marks omitted.) Somers v. Statewide GrievanceCommittee, 245 Conn. 277, 290, 715 A.2d 712 (1998); see Practice Book § 2-38(f). "[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) Wildwood Associates, Ltd. v. Esposito, 211 Conn. 36, 42,557 A.2d 1241 (1989). CT Page 11122
The petitioner also relies on the fact that the Practice Book does not provide for appeal by an attorney to the Superior Court from the imposition of a sanction other than that of reprimand as the basis for its conclusion that the ordering of restitution does not "affect" the attorney's license to practice law, and therefore requires no proof of misconduct. It is not so clear, however that an attorney cannot appeal to a court from a sanction other than a reprimand simply because there is no specific statutory provision. In Pinsky v. Statewide Grievance Committee,
supra, 216 Conn. 232, for example, the petitioner had also relied on the lack of provision for appeal from a reprimand in the General Statutes or in the version of Practice Book in effect at that time to argue that the attorney had no right to appeal to the court from the reprimand sanction. The court rejected the committee's conclusion on two grounds. The court first noted that notwithstanding the lack of right of appeal under the statutes or the rules, the judiciary has authority to review a reprimand order by virtue of its "inherent supervisory authority" over attorney conduct because attorneys are officers and commissioners of the judiciary. Id. The court next noted that "because the public notice of a reprimand is just as damaging to an attorney's reputation as the publicity attending a presentment proceeding, it is inconsistent and inequitable to deny an attorney the right to a review of a reprimand issued by the respondent while affording the right to a review of the trial court's decision in present proceedings." Id., 233-34.
Even though in Pinsky the court did not engage in express constitutional analysis, the rationale underlying its holding is that an attorney is entitled to a judicial review of a sanction that is harmful to his professional reputation. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (Internal quotation marks omitted.) Statewide Grievance Committee v. Presnick,
supra, 215 Conn. 170. Even assuming that the restitution orders do not affect the respondent's reputation,[12] it does not necessarily follow that an attorney could not appeal to a court from such a sanction. "The Pinsky court held that it would be inconsistent to allow a right of appeal from one type of sanction proceeding and not from another."Statewide Grievance Committee v. Spirer, 46 Conn. App. 450, 460,699 A.2d 1047 (1997); see also W. Moller W. Horton, supra, §§ 2-37, p. 199, comment ("While the Rules are silent, the other sanctions under this rule should also be reviewable by the Superior Court."), and 2-38, p. 202, comment ("Since this rule applies only to a reprimand, if the committee issues any sanction under § 2-37 other than a reprimand, judicial review, if desired, should be claimed by a direct action in the Superior Court, as in the pre-rule Pinsky case."); Gersten v. StatewideGrievance Committee, Superior Court, judicial district of Hartford-New CT Page 11123 Britain at Hartford, Docket No. 565949 (June 10, 1997, McWeeny, J.) (19 Conn.L.Rptr. 554, 555) (the court ruled on an appeal from the committee's fee arbitration order pursuant to Practice Book § 2-37
(a)(6) as well as the committee's decision to reprimand the attorney for proven misconduct). The assumption that an attorney cannot appeal from any sanction other than a reprimand thus lacks support in existing case law.
Third, the imposition of restitution where no fault is found violates fundamental legal principles, and, arguably, fundamental constitutional principles as well. It would be clearly impermissible for a court to order restitution absent a finding of wrongdoing in a civil action because restitution is predicated on proof of unjust enrichment, which in turn requires proof of conduct that is "wrongful" in at least some respect.[13] "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Petitioners seeking recovery for unjust enrichment must prove (1) that the respondents were benefitted [benefited], (2) that the respondents unjustly did not pay the petitioners for the benefits, and (3) that the failure of payment was to the petitioners' detriment. . ." (Citations omitted; internal quotation marks omitted.) BarbaraWeisman, Trustee v. Kaspar, 233 Conn. 531, 550,661 A.2d 530 (1995). If a court cannot order restitution in a civil action without proof of wrongful conduct under the lower standard of fair preponderance of the evidence, it is unreasonable for the petitioner to assert that it can impose restitution absent any proof of misconduct, which proof must be by the higher standard of clear and convincing evidence in an attorney disciplinary proceeding.[14]
The legal requirement that the imposition of a sanction must be predicated on a finding of misconduct is so axiomatic that often there is no need to have it spelled out. For instance, the Standards for Imposing Lawyer Sanctions by the American Bar Association (the Standards), frequently used by trial judges in Connecticut as guidelines in disciplinary proceedings,[15] contain at least two references to the obvious requirement of proof of misconduct prior to the imposition of sanctions. "In imposing a sanction after a finding of misconduct, a court should consider the following factors: the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." (Emphasis added.) Standards § 3.0, cited in Statewide GrievanceCommittee. v. Glass, 46 Conn. App. 472, 481, 699 A.2d 1058 (1997), and CT Page 11124Statewide Grievance Committee v. Spirer, supra, 46 Conn. App. 464. "After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." (Emphasis added.) Standards § 9.0. Connecticut case decisions are replete with similar examples showing that a finding of fault must precede the imposition of a sanction. See, e.g., Leib v. Board ofExaminers for Nursing, 177 Conn. 78, 85, 411 A.2d 42 (1979) (with regard to disciplinary actions against a licensed registered nurse, "the board had several options on sanction upon a finding of guilt after a hearing") (emphasis added)).
In its supplemental memorandum of law, the petitioner cites Gersten v.Statewide Grievance Committee, supra, Superior Court, Docket No. 565949, in an effort to support its claim that restitution can be imposed on an attorney without a finding of misconduct. In that case, the attorney appealed from the committee's decision reprimanding him for violating Rule 1.8(a) of the Rules of Professional Conduct and from the committee's order, pursuant to Practice Book § 27M.1.6 (now § 2-37 (a)(6)), requiring him to submit the fee dispute to arbitration. The committee was unable to find, by clear and convincing evidence, that Gersten violated Rule 1.5 of the Rules of Professional Conduct in charging an excessive fee, but the committee nevertheless issued the fee arbitration order. The petitioner concludes that it can similarly issue an order of restitution without a finding of misconduct.
Gersten is distinguishable from the case at bar in at least two crucial respects. Unlike this case, in Gersten the committee did not dismiss the grievance complaint, but found that the petitioner had violated Rule 1.8(a)(4)[16] for failing to notify his client in writing of a possible conflict of interest in his "business transaction" with his client.[17] Because it was undisputed that Gersten had violated the rule in failing to provide the requisite written notice, the court dismissed the appeal of the reprimand sanction.[18]Gersten v. Statewide Grievance Committee, supra, Superior Court, Docket No. 565949.
The court in Gersten also affirmed the fee arbitration order on the basis of Practice Book § 27M.1.6 (now § 2-37 (a)(6)), and the commentary to the rule.[19] Although the petitioner may argue in the abstract that it can impose a fee arbitration order absent a finding of misconduct, in Gersten the committee had made a finding of misconduct before it issued the fee arbitration order together with a reprimand sanction. It is thus at least doubtful in light of existing case law that the petitioner could have issued a fee arbitration order absent a finding of any misconduct. See also Statewide Grievance Committee v. Brown,
Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 172188 (October 20, 1999, Karazin, J.) (noting that the committee CT Page 11125 issued a fee arbitration order after a finding of misconduct and in conjunction with a reprimand sanction); Braunstein v. Statewide GrievanceCommittee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 548149 (October 24, 1997, McWeeny, J.) (20 Conn.L.Rptr. 467) (noting that the committee issued a fee arbitration order after a finding of misconduct and in conjunction with a reprimand sanction and a restitution order). In Gersten, the fee dispute could be attributed to the attorney's failure to inform the client in writing of a potential conflict of interest in their business transaction, and the fee arbitration order was rationally related to that misconduct. In this context, the court rejected Gersten's argument that the order also required a specific finding that the fees he charged were unreasonable, in violation of Rule 1.5 of the Rules of Professional Conduct. Gerstenv. Statewide Grievance Committee, supra, Superior Court, Docket No. 565949. Unless the issuance of a fee arbitration order requires a specific finding of violation of Rule 1.5, which the petitioner has not argued, Gersten does not support the petitioner's conclusion that it is free to impose sanctions or conditions without a finding of any misconduct.
Even assuming, arguendo, that the petitioner could issue a fee arbitration order without a finding of any misconduct, such an order is qualitatively different from a restitution order because it does not determine the merits of the fee dispute, but only mandates the forum for the resolution of that dispute. Practice Book § 2-37(b) makes it clear that the fee arbitration is a service provided by the bar association at no cost to the attorney or the client.[20] An attorney also has a professional duty to conscientiously submit a fee dispute to an arbitration or mediation procedure if the bar has established the procedure for the resolution of fee disputes.[21] Thus, even if the petitioner could, in the absence of a finding of misconduct, order a fee arbitration, which is only a forum requirement, it does not follow that the petitioner can order restitution absent a finding of misconduct because restitution of necessity requires some determination on the merits.
The petitioner's practice in this case deviates from its own practice in other cases in which it adhered to the legal requirement of finding misconduct before ordering restitution. For example, in Athanson v.Statewide Grievance Committee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 515693 (February 25, 1993,Maloney, J.), the committee had found, by clear and convincing evidence, that the attorneys had violated some specified rules of professional conduct before it reprimanded the attorney and ordered restitution.[22]
See also Braunstein v. Statewide Grievance Committee, supra, Superior Court, Docket No. 548149 (noting that the committee issued a reprimand CT Page 11126 and ordered restitution and fee arbitration upon a finding of misconduct).
Finally, the respondent has argued that imposition of restitution absent a finding of misconduct violates the constitutional guarantee of due process. The petitioner argues that because restitution does not "affect" an attorney's license to practice law, the "imposition of restitution does not thereby deprive the respondent of a recognized property interest giving him a constitutional right to judicial review."
Generally, the courts eschew unnecessary constitutional analysis when they are able to decide a case either on the basis of an established common-law principle or in reliance on a statutory provision. See Packerv. Board of Education, 246 Conn. 89, 98, 717 A.2d 117 (1998). Nevertheless, the court notes that it is indisputable that all of the traditional forms of real and personal property, such as land or money, fall within the classical definition of property. See Nowak et al., Handbook on Constitutional Law (West 1978), p. 491. "We have little difficulty accepting the theory that the use of valuable property — in this case money — is itself a legally protectable property interest." Dickman v. Commissioner, 465 U.S. 330, 336,104 S.Ct. 1086,79 L.Ed.2d 343 (1984). Both the federal and the state constitutions prohibit deprivation by government actions of "life, liberty or property" "without due process of law." U.S. Const., amend. XIV, § 1; Conn. Const., art, I, § 8. "Whenever property is taken from someone with the assistance of government officers there is a deprivation of property." Nowak, supra, p. 492. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without dueprocess of law." (Emphasis in original.) Zinermon v. Burch, 494 U.S. 113,125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). "Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 536, 525 A.2d 940 (1987). "Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law." Black's Law Dictionary (6th Ed. 1990), p. 500. "Aside from all else, "due CT Page 11127 process' means fundamental fairness and substantial justice." Id., pp. 500-501.
If a court orders a respondent to pay restitution to a private party after a full trial, there is deprivation of property by state action, but there is no denial of due process because the respondent has received a fair process — the opportunity for a full trial. See Nowak, supra, p. 492. The court may not, however, impose restitution, thereby depriving a constitutionally protected property interest, without a finding of fault after a full trial, or impose restitution after having dismissed a lawsuit, because the deprivation would be without due process of law.
If a court cannot deprive a respondent of his constitutionally protected property interest without a finding of fault after a full trial, the petitioner can take no exception to the fundamental constitutional requirement of due process. The scheme of attorney regulation, even though in a class of its own, cannot operate in violation of the constitutional mandate of due process. "In attorney disciplinary proceedings, two interests are of paramount importance. On the one hand, we must not tie the hands of grievance committees and trial courts with procedural requirements so strict that it becomes virtually impossible to discipline an attorney for any but the most obvious, egregious and public misconduct. On the other hand, we must ensure that attorneys subject to disciplinary action are afforded the full measure of procedural due process required under the constitution so that we do not unjustly deprive them of their reputation and livelihood." StatewideGrievance Committee v. Botwick, 226 Conn. 299, 307, 627 A.2d 901 (1993). The petitioner's practice here, the summary imposition of restitution without a finding of misconduct, operates to deprive the respondent of his constitutionally protected property interest without due process.
In summary, the court has denied the motion to dismiss this presentment action for lack of subject matter jurisdiction, but it grants grant the motion to strike the amended petition because the alleged failure to comply with petitioner's restitution order imposed without a finding of misconduct cannot be the basis of a presentment action. The amended petition thus does not state a claim upon which relief may be fails as a matter of law.
Jonathan E. Silbert, Judge